UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANJANETTE BEAVER, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | Hon. |
| v. ) | |
| ) | |
| MACOMB COUNTY, a Michigan Charter ) | |
| County, DANIEL SPITZ, in his individual ) | |
| and official capacity, SPITZ ) | |
| PATHOLOGY GROUP, PLLC, a ) | |
| Michigan professional limited liability ) | |
| corporation, ANDREW McKINNON, in ) | |
| his official and individual capacities, ) | |
| PATRICIA ROLAND, in her official and ) | |
| individual capacities, WILLIAM ) | |
| RIDELLA, in his official and individual ) | |
| capacities, and JACQUELINE ) | |
| FONTENOT, in her official and individual ) | |
| capacities, ) | |
| ) | |
| Defendants. ) | |

_____/

Joel B. Sklar (P38338)
LAW OFFICES OF JOEL B. SKLAR
Attorney for Plaintiff
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529 / 313-963-9310 (fax)
joel@joelbsklarlaw.com

_____/

**COMPLAINT AND JURY DEMAND**

Anjanette Beaver, by and through her counsel, Law Offices of Joel B. Sklar, files this Complaint and Jury Demand and says:

1.      Plaintiff Anjanette Beaver is a resident of Macomb County, Michigan, which is located in this Judicial District.

2.      Defendant Macomb County is a Michigan Charter County and governmental entity which operates and does business as the Macomb County Medical Examiner's Office which is located in this Judicial District.

3.      Defendants Daniel Spitz and Spitz Pathology Group, PLLC ("SPG"), a Michigan professional limited liability corporation, was/is the Macomb County Chief Medical Examiner and resides and/or transacts business in this Judicial District. At all times, Daniel Spitz and SPG were acting as agents and/or employees of Macomb County. He is being sued in his official and individual capacities.

4.      Defendant Andrew McKinnon was/is the Director of Macomb County Human Resources and Labor Relations and resides and/or transacts business in this Judicial District. He is responsible for employment decisions concerning County employees. He is being sued in his official and individual capacities.

5.      Defendant Patricia Roland was employed as the Macomb County Manager of Operations and resides and/or transacts business in this Judicial District. She managed and administrated the Medical Examiner's Office under the direction

and supervision of Defendants Spitz/SPG and an employee of Macomb County. She is being sued in her official and individual capacities.

6.     Defendant William Ridella was the Director of Macomb County Health Department and resides and/or transacts business in this Judicial District. He too was responsible and/or influenced employment decisions and conditions concerning County employees. He is being sued in his official and individual capacities.

7.     Defendant Jacqueline Fontenot was/is the Macomb County Medical Examiner's Office Manager of Operations and resides and/or transacts business in this Judicial District.  She replaced Defendant Roland who left employment with Defendant Macomb County in or about August of 2020. She is being sued in her official and individual capacities.

8.     At all relevant times, all individually named Defendants were operating under color of law at the time of the constitutional violations described herein and are not entitled to qualified or any other immunity.

9.     At all relevant times, all individually named Defendants were acting as agents and/or employees of Defendant Macomb County and/or with authority granted each individual Defendant by the County.

10.     This Court has subject matter jurisdiction over this controversy because Plaintiff raises federal questions under *28 U.S.C. § 1331* pursuant to *42 U.S.C. § 1983* and Title VII of the Civil Rights Act of 1964, being *42 U.S.C. §2000a, et seq.*

3

and other federal statutes. The Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to *28 U.S.C. § 1367(a).*

11.     Venue is proper in this Court pursuant to *28 U.S.C. § 1391(b)* because a substantial part of the acts giving rise to this lawsuit occurred in this Judicial District and Defendants conduct business and/or employed Plaintiff within this Judicial District.

## FACTUAL ALLEGATIONS

12.     Plaintiff Anjanette Beaver is an Indigenous Native American woman of color, and part of a protected class.

13.     Plaintiff worked as a patrol officer for the City of Detroit Police Department (DPD) for 27 years.

14.     In 2015, after her retirement from the DPD, Plaintiff was hired by Defendant Macomb County as a Medical Examiner Investigator.

15.     During all times, Plaintiff was an exemplary employee.

16.     The Macomb County Medical Examiner's Office is part of the Macomb County Health Department.

17.     Until January 2021, Defendant William Ridella was the Director of the Macomb County Health Department.  Among other things, Defendant Ridella was responsible for ensuring that the Medical Examiner's Office was in full compliance required to ensure compliance with all applicable laws, statutes, regulations, rules,

4

and policies which concerned or related to County employees, like Plaintiff. This obligation included and extended to those County employees working in the Medical Examiner's Office under the direction and supervision of Spitz/SPG.

18.    Defendant Andrew McKinnon is the Director of Macomb County Human Resources and Labor Relations. Among other things, Defendant McKinnon was responsible for ensuring that the Medical Examiner's Office was in full compliance required to ensure compliance with all applicable laws, statutes, regulations, rules, and policies which concerned or related to County employees, like Plaintiff. This obligation included and extended to those County employees working in the Medical Examiner's Office under the direction and supervision of Spitz/SPG.

19.    Defendant Daniel Spitz, a White male, and Spitz Pathology Group, P.L.L.C. (collectively Spitz/SPG), was/is the Macomb County Chief Medical Examiner and so served during the entire term of Plaintiff's employment. He worked under the  directions and supervision of Defendant Director Ridella and Defendant McKinnon.

20.    As the County's Medical Examiner, Defendant Spitz/SPG was the person "in charge" of the Medical Examiner's Office. Mich. Comp. Laws § 52.201, *et. seq.*

21.    Defendant Spitz/SPG also contracted with Macomb County to administrate and manage the Medical Examiner's Office, including, but not limited

to, the hiring, supervision, discipline, and training of morgue employees; the creation, publication, training, and enforcement of office policy and procedures concerning, *inter alia*, unlawful discrimination and compliance with all health, safety, and other laws. (**Exhibit A, Spitz/SPG Agreement**)

22.     The Spitz/SPG Agreement was approved by the Macomb County Board of Commissioners pursuant to statute and signed by Al Lorenzo, Deputy County Executive.

23.     Spitz/SPG and the County Defendants were joint employers of Plaintiff during all relevant periods.

24.     Dr. Mary Pietrangelo, a White female, worked as the County's Deputy Medical Examiner and was an employee of SPG and the County.

25.     Until her discharge in August 2020, *infra,* Defendant Roland, a White female, was the Manager of Operations for the Medical Examiner's Office. She worked under the direction and supervision of Spitz/SPG and/or the County Health Department.

26.     As Manager of Operations for the Medical Examiner's Office and County employee, Defendant Roland was also responsible for the creation, distribution, and enforcement of policies and procedures to address and prevent unlawful discrimination or retaliation.

27.     On July 26, 2015, Plaintiff began her new job with the County.

6

28.    Plaintiff's immediate supervisor was Gretchen Terebesi, a White female.

29.    Shortly after she began her job, Plaintiff found the work environment at the Medical Examiner's Office sexually charged and tainted by racial animus.

30.    Among other things, office staff made offensive sexual and racist comments pertaining to the anatomy of deceased persons and their families; pornographic and racist images were regularly and openly displayed in the office by staff with the approval, encouragement, and participation of supervisors, including Defendants Spitz and Roland; staff who participated in the unlawful conduct were favored while those who refused to participate or otherwise objected to the blatantly unlawful and offensive conduct and communication were bullied, ridiculed, demeaned, and/or discharged.

31.    The unlawful conduct was open, notorious, and a constant theme throughout Plaintiff's employment.

32.    Plaintiff worked at the Medical Examiner's Office with co-employee, M.E., a female of Egyptian ancestry.

33.    Plaintiff observed two favored female White co-employees Morgue Specialist B.H., and Morgue Specialist V.S., together with Defendant Roland, refer to M.E. as "dyke," "lezbo," "gay," and other degrading, demeaning, unlawful, hurtful and offensive statements.

34.     M.E. complained to Defendant Roland about the unlawful harassment and the existence of a hostile work environment based on sex, national origin, and religion.

35.     The day M.E. reported the unlawful conduct to Macomb County Human Resources, she was fired.

36.     The Equal Employment Opportunity Commission (EEOC) later found probable cause to support M.E.'s complaints of retaliation.

37.     The retaliatory discharge of M.E. worried Plaintiff that if she reported unlawful conduct either internally or externally, she too would be fired or otherwise retaliated against.

38.     A former female co-employee Medical Examiner Investigator, K.K., told Defendant Roland she was pregnant.

39.     Plaintiff saw K.K. in tears.

40.     K.K. told Plaintiff when she notified Roland of the pregnancy, Defendant Roland told K.K. she would most likely be terminated.

41.     K.K. told Plaintiff she was experiencing complications with her pregnancy but was afraid to call in sick for fear of being fired.

42.     K.K. also told Plaintiff her physician had placed her on "restrictions."

43.     K.K. told Plaintiff she feared retaliation if she told her supervisors Terebesi, Defendant Roland, and/or Defendant Spitz about her restrictions.

44.     Defendant Roland continued to harass K.K. throughout her pregnancy, which Plaintiff either observed or learned about.

45.     After K.K. returned from maternity leave, Defendant Roland targeted K.K. and assigned her significantly larger amounts of work than Roland assigned similarly situated employees.

46.     Female Morgue Specialist V.S. also bullied K.K. and referred to her as a "lazy bitch."

47.     V.S.'s treatment of K.K. was known to Defendants Spitz and Roland, who took no action to document, investigate, ameliorate, or otherwise correct her behavior.

48.     K.K. left employment with the Medical Examiner's Office because of the retaliation and hostile environment created and nurtured by Defendants Spitz and Roland which made working conditions unreasonably oppressive and intolerable.

49.     Plaintiff's desk was located right next to the desk of V.S.

50.     V.S.'s desk displayed inappropriate sticky notes with penises drawn on them in plain view of all persons who worked at or visited the Investigator's office.

51.     Defendants Spitz and Roland knew about the unlawful displays and imagery but never documented, investigated, ameliorated, or corrected V.S.'s behavior.

52.     Plaintiff's immediate supervisor, Defendant Gretchen Terebesi, often instructed Plaintiff to "Go deal with your people" in reference to interacting or identifying decedents of African-American families believed to be "hostile" or "difficult."

53.     When Plaintiff was instructed to "Go deal with your people," V.S. would begin to chant "Fight! Fight! Fight!" joined by Defendant Roland, Terebesi, and B.H.

54.     Plaintiff overheard a female County IT employee comment on a pornographic screen saver displayed on a fellow Medical Examiner Investigator's computer, which displayed a sexually inappropriate pornographic image of a man.

55.     The female County IT employee's comment was made in the presence of Plaintiff's immediate supervisor, Gretchen Terebesi, who acknowledged the County IT employee's comment.

56.     Despite her obligation to do so, Terebesi never documented, investigated, addressed, ameliorated, elevated, or corrected the sexually inappropriate images seen by the female IT technician. Instead, she was indifferent.

57.     From January 2019 to February 2020, Plaintiff observed K.L. (wife of Macomb County Deputy/Chief Executive Albert Lorenzo) in the autopsy and office areas.

58.     K.L. did not work in the Medical Examiner's office and held no formal or informal position with the County, other than being the spouse of Macomb County Deputy/Chief Executive Albert Lorenzo.

59.     Plaintiff observed K.L. performing a procedure on the body of a decedent despite the absence of any training, licensure, certification or permission from the decedent's family.

60.     K.L. also attended the autopsies of homicide victims and other examinations out of nothing more than morbid curiosity.

61.     K.L. had no legitimate reason to either be in attendance at the autopsy or perform procedures for which she was not trained, licensed, or otherwise permitted to do under law.

62.     Plaintiff questioned Terebesi and Roland about the legalities of a civilian like K.L., with no forensic training, education, licensure or certification, being permitted to participate in a medicolegal death investigation and compromise criminal investigations.

63.     Plaintiff was advised by Terebesi and Defendant Roland to "be nice, Spitz is doing Al Lorenzo a favor," in reference to K.L. being permitted to attend autopsies and perform procedures.

64.     Plaintiff worked with White female co-employee Morgue Specialist B.H.

65. B.H. often exhibited unprofessional, offensive behavior; and, like V.S. and others in the office, displayed inappropriate, obscene, and sexually explicit photographs/images in plain view for all to see.

66. B.H. often had inappropriate sexual conversations with Defendant Spitz and Defendant Roland in the Investigator's Office, which Plaintiff and others could not help but overhear.

67. B.H. kept and displayed penis shaped confetti at her desk, which were also scattered in the hallways and on the floors of the office in plain view of Plaintiff and others.

68. Like others favored by Defendants Spitz and Roland, B.H. maintained pornographic images on the screen saver of her County owned computer monitor.

69. The obscene images were mostly of males and their genitalia.

70. B.H. often updated the images.

71. White Female co-employee Investigator L.P. worked in the Medical Examiner's Office with Plaintiff.

72. Like V.S. and B.H., L.P. openly maintained and displayed pornographic images on her taxpayer owned screen saver.

73. These inappropriate images included barely clothed Black males and photographs of penis shaped items.

74.     L.P. also openly displayed drawings of penises and stickers in the shape of penises in the workplace.

75.     On or about May 20, 2020, L.P. texted Plaintiff a pornographic, obscene picture of a large naked Black male sitting on the edge of a bed with his erect penis exposed.

76.     Plaintiff was disgusted and repulsed.

77.     Plaintiff later observed the same obscene photograph on V.S.'s desk with the names of Defendant Spitz and Deputy Chief Medical Examiner Dr. Mary Pietrangelo written on different parts of the naked Black male's body.

78.     On May 21, 2020, L.P. placed the pornographic image on Defendant Spitz's computer monitor as _his_ screen saver.

79.     Defendants Spitz and Roland laughed when they saw the inappropriate image.

80.     Defendants Spitz and Roland did not document, address, investigate, ameliorate, elevate, or remediate the unlawful conduct.

81.     Instead, Spitz and Roland encouraged, participated in, and condoned the unlawful behavior.

82.     On May 26, 2020, a chocolate frosted cake in the shape of a Black male penis ("Black Penis Cake") was brought into the office by L.P., a White Female, for V.S.'s birthday.

83.     Balloons with penises drawn on them were placed in V.S.'s desk cubby hole and remained on display for days afterwards.

84.     Defendant Spitz, Defendant Roland, Terebesi, V.S., B.H., and L.P. all went to the lunchroom and laughed when they saw the Black Penis Cake.

85.     The Black Penis Cake remained in the lunch area for four days in spite of Plaintiff repeatedly asking why the obscene Cake remained displayed in the Medical Examiner's Office.

86.     Neither Defendants Spitz nor Roland documented, addressed, investigated, ameliorated, elevated, or corrected the unlawful behavior.

87.     B.H., V.S., and L.P. displayed offensive, inappropriate screensavers; typically, of Black males in sexually provocative poses.

88.     B.H. placed a reduced application window over the partially covered groin of one of the inappropriate and overtly sexual images.

89.     When the application window was closed, a male's groin and penis area were displayed.

90.     When Spitz saw the application and how it worked, he laughed.

91.     Afterwards, Plaintiff saw Defendant Roland, B.H., and two other employees at B.H.'s computer, activating the reduced window over the groin area of the screen saver image for amusement.

14

92.     Neither Spitz nor Roland (nor any other supervisor) documented, addressed, investigated, ameliorated, elevated, or corrected the unlawful work environment.

93.     From June 15, 2020 through July 2020, Defendant Roland used B.H.'s computer and signed on to B.H.'s profile.

94.     Defendant Roland saw the pornographic photographs displayed by B.H.

95.     Defendant Roland did not document, address, investigate, ameliorate, elevate, or correct B.H.'s unlawful activity or her misuse of taxpayer funded property.

96.     Instead, Defendant Roland found the offensive pornographic images amusing and appropriate for display in the Medical Examiner's Office.

97.     On July 4, 2020, Plaintiff advised Defendant Roland that a distraught family had appeared at the Medical Examiner's Office and damaged the locked doors.

98.     Defendant Roland responded to Plaintiff, "Are they Black? They can break the doors, and nothing will happen to them because they are Black. They'll just say they were upset."

99.     As an Indigenous woman of color, Plaintiff found Defendant Roland's remark appalling, offensive, and patently racist.

100.   On or about July 10, 2020, Plaintiff filed an internal complaint with Macomb County Human Resources and Labor Relations about the offensive, unlawful conduct of staff and supervisors which was cultivated, encouraged, nurtured, and approvingly participated in by Defendant Spitz, Defendant Roland and supervisor Terebesi.

101.   On or about July 14, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) about the oppressive and unlawful conduct. (**Exhibit B, EEOC Charge**)

102.   After Plaintiff made her internal complaint, Spitz began to harshly scrutinize and criticize Plaintiff's work in a manner and tone he had not used before.

103.   Spitz became increasingly combative, oppositional, and uncooperative with Plaintiff making her work far more cumbersome and difficult.

104.   Spitz obstructed Plaintiff's work by refusing to communicate with her or respond to her in a timely manner thereby making Plaintiff's job more difficult and requiring her to incur overtime at the waste and expense of taxpayer dollars.

105.   Spitz would glare and grunt at Plaintiff, behavior Plaintiff had never seen from Spitz until she filed her complaints of discrimination.

106.   On August 3, 2020, local and national news outlets reported the Black Penis Cake incident at the Medical Examiner's Office. (**Exhibit C, News Articles**, *"Macomb County morgue buried in scandal after penis cake shows up at office,"*

*Det News* 08/03/2020; *"Morgue workers fired over cake decorated with black penis," NY Post,* 08/03/2020)

107.   After publication of the scandal, Spitz's already hostile conduct toward Plaintiff worsened.

108.   When Plaintiff told supervisor Gretchen Terebesi about Spitz's unlawful conduct, Terebesi told her "I bet there's an article posted in one of the newspapers again."

109.   Afterwards, Plaintiff received a link from Terebesi to a Detroit News Article regarding employees discharged from Macomb County Medical Examiner's Office for unlawful conduct being hired by the St. Clair County Medical Examiner's Office. (**Exhibit C, News Articles**, *Det News 08/21/2020, "3 fired from Macomb medical examiner's office keep jobs in St. Clair"*)

110.   During all or part of Plaintiff's employment with Defendant County, Defendant Spitz/SPG also served as the St. Clair County Medical Examiner where he was "in charge" of the office. Mich. Comp. Laws § 52.201c, *et. seq.*

111.   Defendant Roland, B.H. and V.S., the persons terminated by Macomb County because of their unlawful conduct at the Macomb County Medical Examiner's Office were later hired by St. Clair County to work for their Medical Examiner, Defendant Spitz/SPG.

112.   Macomb County did not discipline, admonish, or investigate Spitz in spite of his unlawful conduct in the systemic creation, cultivation, encouragement, nurturance, and tolerance of a blatantly hostile work environment based upon sex, race, and his intentional acts of retaliation intended to punish, dissuade, intimidate, deter, and silence public employees, like Plaintiff and others at the Medical Examiner's Office (*i.e.,* M.E., K.K. and R.S.), who reported violations of civil rights and other laws.

113.   On August 11, 2020, Plaintiff met with Human Resources and Labor Relations Defendant Director McKinnon, Defendant Health Director Ridella, Deputy Health Director Krista Willette, Macomb County Deputy/Chief Policy Advisor Albert Lorenzo, and Spitz, to discuss her complaints of a hostile work environment.

114.   Plaintiff was advised the County had terminated Defendant Roland as the Office Manager and that Gretchen Terebesi (a participant in the unlawful conduct) was now the new Interim Office Manager "under the guidance" of Defendant Spitz/SPG and Deputy Medical Examiner, Mary Pietrangelo (the very entities responsible for the discrimination and creation of the toxic work environment about which Plaintiff complained).

115.   Following her discharge, Defendant Roland was later hired for essentially the same position in St. Clair County, where Spitz/SPG was "in charge" of the Medical Examiner's Office.

116.   Defendant McKinnon told Plaintiff "there is absolute intolerance" in relation to "retaliation" but refused to inform Plaintiff of the results of his "findings" and refused to take disciplinary, corrective or any other remedial actions against Defendant Spitz/SPG despite the fact Spitz/SPG was "in charge" of the Medical Examiner's Office and responsible for the systemic discrimination, harassment and retaliation reported by Plaintiff and other morgue employees, like M.E. and R.S.

117.   Lorenzo told Plaintiff "the critical work performed on the day-to-day basis is valued" and "continue to provide customer service, timeliness, and work together."

118.   Despite McKinnon and Lorenzo's platitudes, the retaliation by Spitz/SPG worsened and the work environment became even more hostile, further impeding and/or impairing Plaintiff's ability to perform her job.

119.   Among other things, Spitz initiated disciplinary investigations focused on Plaintiff despite the absence of any wrongdoing, treated her worse than other similarly-situated employees and actively impeded Plaintiff's ability to perform her job by refusing to communicate and/or cooperate with her on case files, thereby wasting time and taxpayer dollars.

120.    On August 31, 2020, Plaintiff formally notified Defendant McKinnon, County Executive Hackel, the entire Macomb County Board of Police Commissioners (collectively and individually), the Macomb County Board of Ethics, and the EEOC of the unlawful harassment, hostile environment, retaliation and other unlawful conduct at the Medical Examiner's Office created, nurtured, cultivated, encouraged, and tolerated by Defendant Spitz.

121.    On September 9, 2020, Plaintiff filed a second Charge of Discrimination with the EEOC for retaliation. (**Exhibit D, Second Charge of Discrimination**)

122.    On September 11, 2020, in a meeting attended by other County officials, Human Resources and Labor Relations Deputy Director Karlyn Semlow told Plaintiff "we were unable to corroborate a violation of county policy."

123.    Human Resources and Labor Relations Deputy Director Semlow promised Plaintiff she would receive a disposition of the investigation concerning her employment related claims in the mail. Plaintiff never did.

124.    At no point during the meeting were Plaintiff's concerns for her personal safety or on-going retaliation by Spitz/SPG addressed.

125.    At no point during the meeting was Plaintiff advised as to any remedial or corrective action adopted or otherwise undertaken to stop Defendant Spitz's

unlawful conduct and the sexual, racist, and retaliatory hostile environment created, encouraged, nurtured, tolerated, and cultivated by him.

126.   Plaintiff told Deputy Director Karlyn Semlow and others in attendance she disagreed with the findings and that Spitz's retaliation was on-going.

127.   Those in attendance did not care.

128.   On October 31, 2020, Plaintiff notified the Macomb County Covid-19 Team (Director Ridella, Medical Examiner Spitz, Deputy Medical Examiner Dr. Mary Pietrangelo, and Office Manager Terebesi) of her concerns about the lack of Personal Protection Equipment (PPE), lack of training, the threat of exposure, and cross-contamination of vehicles and homes visited by Investigators.

129.   In November 2020, Plaintiff attended a meeting with Defendant Spitz, Dr. Pietrangelo, and Terebesi to discuss information submitted to the Macomb Covid-19 Team.

130.   At the time of the meeting, Plaintiff knew of a previous Morgue Specialist, R.S., a White female and co-employee, who was fired in September 2020 within days of informing Spitz, Ridella, and McKinnon of myriad violations of health and safety laws related to Covid-19 and additional infectious diseases, including the lack of Personal Protection Equipment (PPE) for staff at the Medical Examiner's Office.

131.   During the meeting, Spitz insisted adequate PPE was available.

132.   Plaintiff told Spitz this was not true.

133.   Plaintiff requested access to Tyvek suits, which Spitz denied.

134.   Plaintiff told Spitz no one had been fit-tested or trained for PPE and respiratory protection as required by law.

135.   Spitz did not care.

136.   Shortly afterwards, Plaintiff became ill and was diagnosed with Covid-19 which required her to take sick time.

137.   On or about November 18, 2020, Plaintiff contacted the Michigan Occupational and Safety Health Administration (MIOSHA) to report her suspicions of violations of health and safety laws which exposed public employees and persons who came into contact with the morgue or morgue personnel to infection.

138.   On November 30, 2020, the day Plaintiff returned from her mandated Covid-19 quarantine, she received the first written discipline of her entire period of employment with the County.

139.   Interim Office Manager Terebesi told Plaintiff this was the first time Spitz ever ordered her to submit a written report of discipline.

140.   On December 6, 2020, Plaintiff informed Interim Office Manager Terebesi, Defendants Ridella, Spitz and McKinnon of her MIOSHA complaint.

141.   That same day, Plaintiff was involuntarily taken off scene responses by Office Manager Terebesi at the direction of Ridella, Spitz and/or McKinnon.

142.   In December 2020, Plaintiff informed Terebesi that Defendant Spitz was refusing to cooperate or communicate with her in a timely manner on investigations which impeded her ability to do her job and required her to work overtime at taxpayer expense.

143.   Terebesi advised Plaintiff to submit overtime sheets for time worked, which Plaintiff did.

144.   On December 9, 2020, a MIOSHA Investigator visited the Macomb County Medical Examiner's Office for an inspection.

145.   On December 14, 2020, Defendant Jacqueline Fontenot, a White female, was appointed by the County as the new Manager of Medical Operations for the Medical Examiner's Office, the job formerly held by Defendant Roland.

146.   Defendant Director McKinnon, Defendant Spitz and Al Lorenzo characterized Defendant Fontenot as a "fresh start" and a seasoned "ex-cop" with "managerial experience."

147.   In fact, Defendant Fontenot was less experienced than other applicants, including interim Office Manager Terebesi, was not certified by the American Board of Medicolegal Death Investigations, and had not worked as a police officer for years.

148.   Defendant Fontenot, however, had worked for Spitz at the St. Clair County Medical Examiner's Office and had a pre-existing relationship with Spitz/SPG.

149.   On December 16, 2020, a MIOSHA Investigator again visited the Macomb County Medical Examiner's Office for inspections and interviews.

150.   On December 16, 2020, Plaintiff received an email from Defendant Fontenot which denied Plaintiff earned overtime. This was the first time Plaintiff ever had her earned overtime denied.

151.   Afterwards, Plaintiff was forced by Defendants Spitz and Fontenot to work midnight shifts despite her being the most senior Investigator in a deviation from past practice.

152.   On February 18, 2021, MIOSHA informed Defendant "Jacky" Fontenot of the results of the MIOSHA investigation instigated by Plaintiff.

153.   On February 18, 2021, MIOSHA issued a "Citation and Notification of Penalty" to the County, together with a "Proposed Penalty Notice" for $6,300.00 for four **"Serious"** violations at the Medical Examiner's Office and identified by Plaintiff. (**Exhibit E, MIOSHA 02/18/2021 Letter to Fontenot, with attachments**)

154.   On February 18, 2021, Plaintiff was informed that Defendant Fontenot conducted an audit of Plaintiff and was deducting money from Plaintiff's paycheck for time she was sick with Covid-19.

155.   On February 19, 2021, Brian Szmatlua of Human Resources informed Plaintiff that 20 hours were being deducted from her sick-time bank because she was out sick with Covid-19 in November 2020.

156.   Defendant County also deducted $300.00 from Plaintiff's paycheck from Federal Covid-19 related funds she received.

157.   Plaintiff knew of other similarly situated employees who were neither audited nor had their pay reduced despite an absence from work.

158.   On February 19, 2021, Plaintiff emailed Defendant County Human Resources requesting Family Medical Leave Act ("FMLA") directions and documentation because of the anxiety and stress caused by Defendants' individual and collective unlawful conduct.

159.   On February 20, 2021, Plaintiff again emailed Defendant County Human Resources requesting FMLA directions and documentation.

160.   On March 2, 2021, Plaintiff submitted the FMLA documentation to Defendant County Human Resources, Defendant Fontenot and supervisor Terebesi but received no formal response.

161.   On March 5, 2021, Defendant County Human Resources representative Szmatlua singled Plaintiff out and informed her that additional sick-time and monies were being deducted from a "day in December" that purportedly was not recorded by Terebesi and Defendant Fontenot.

162.   Plaintiff knew other similarly-situated employees whose time was not audited and/or did not have wages deducted despite missing time from work.

163.   On March 15, 2021, Defendant County, through its agents and employees, including Defendants McKinnon, Ridella, Spitz/SPG and Fontenot, constructively discharged Plaintiff by intentionally making working conditions so intolerable and unpleasant with the expectation that Plaintiff would quit. She did. (**Exhibit F, Constructive Discharge Letter**)

164.   On March 19, 2021, received a Right to Sue Letter from the EEOC. (**Exhibit G, RTS**)

## COUNT I

### TITLE VII VIOLATION
### SEX AND RACE DISCRIMINATION/CREATION
### OF A HOSTILE WORK ENVIRONMENT

165.   Plaintiff restates the allegations above work for word and paragraph for paragraph.

166.   Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin" 42 U.S.C. § 2000e-2(a)(1).

167.   Defendant Macomb County is an employer covered under Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

168.   Plaintiff is an employee under Title VII of the Civil Rights Act of 1964, as amended.

169.   As an indigenous Woman of color, Plaintiff is a member of a protected class.

170.   As described above, Plaintiff was subjected to severe and pervasive sexual harassment by supervisors and co-employees, including Defendant Spitz, Defendant Roland, Terebesi and co-employees B.H., V.S. and L.P.

171.   As described above, the Medical Examiner's Office was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's work environment and create an abusive work environment.

172.   As described above, the unwelcome communication and conduct were so severe or pervasive to create an environment that a reasonable person would find hostile or abusive and Plaintiff, the victim, subjectively regarded the environment as abusive.

173.   Plaintiff was subjected to unwelcome communication and/or conduct on the basis of sex and/or race.

174.   The unwelcome sexual and/or race-based conduct or communication was intended to, or in fact did, substantially interfere with Plaintiff's job and/or created an intimidating, hostile, or offensive work environment.

175.    There is a basis for holding Defendant Macomb County liable for the hostile work environment experienced by Plaintiff at the Medical Examiner's Office.

176.    Defendant Macomb County's decision makers, including Defendants Director of Health Ridella, Director of Human Resources and Labor Relations McKinnon, and Defendant Medical Examiner Spitz/SPG knew of the hostile work environment but failed to document, promptly investigate, ameliorate, correct or remediate the hostile environment.

177.    Instead, Defendant Macomb County protected and insulated Defendant Spitz, the very person responsible for the creation, nurturance, cultivation and continuation of the hostile environment described in this Complaint.

178.    Among other things, Defendant Directors Ridella and McKinnon failed to investigate, discipline, or correct Defendant Spitz/SPG's unlawful conduct which only emboldened Spitz/SPG and worsened the abusive toxic working environment at the Medical Examiner's Office for Plaintiff and other employees.

179.    Defendant Macomb County's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

180.    As a direct and proximate result of Defendant Macomb County's wrongful acts and omissions, including the constructive discharge of Plaintiff, Plaintiff suffered economic loss, lost wages, front pay, fringe benefits and the like and non-economic injuries, including but not limited to, mental anguish, physical

and emotional distress, humiliation, mortification, outrage, embarrassment, anxiety, depression, degradation, fear, loss of the enjoyments of life, loss of earnings, and other damages which will continue throughout and beyond this litigation.

## COUNT II

### TITLE VII VIOLATION
### RETALIATION AND CREATION OF A RETALIATORY
### HOSTILE ENVIRONMENT

181.   Plaintiff restates the allegations above word for word and paragraph for paragraph.

182.   Plaintiff engaged in protected activity under Title VII when she reported the violations of her civil rights internally and when she reported the violations to the EEOC.

183.   Defendant Macomb County, through its agents and employees, knew of Plaintiff's protected activity because she and the EEOC told them about it.

184.   Defendant Macomb County, through its agents and employees, retaliated against Plaintiff when they took adverse employment actions against her because of her protected activity, including, among other things, creating a retaliatory hostile environment, issuing her bogus disciplines, docking her pay, treating her differently from similarly situated employees, and intentionally engaging in other unlawful conduct which would deter a reasonable person of ordinary firmness from speaking out.

185.   A causal connection exists between Plaintiff's protected activity and the adverse employment actions wrongly visited upon Plaintiff.

186.   Plaintiff was subjected to severe or pervasive retaliatory harassment by Defendants Spitz/SPG, Fontenot, McKinnon, and Ridella, culminating in her constructive discharge on March 15, 2021.

187.   The adverse actions taken by Defendant Macomb County against Plaintiff would deter a person of ordinary firmness from speaking out about the violations of civil rights and other laws at the Macomb County Medical Examiner's Office.

188.   As a direct and proximate result of Defendant Macomb County's wrongful acts and omissions, including the constructive discharge of Plaintiff, Plaintiff suffered economic loss, lost wages, front pay, fringe benefits and the like and non-economic injuries, including but not limited to, mental anguish, physical and emotional distress, humiliation, mortification, outrage, embarrassment, anxiety, depression, degradation, fear, loss of the enjoyments of life, loss of earnings, and other damages which will continue throughout and beyond this litigation.

## COUNT III

### RETALIATION IN VIOLATION OF PLAINTIFF'S
### *FIRST AMENDMENT* FREE SPEECH RIGHTS
### PURSUANT TO 42 USC §1983

189.    Plaintiff restates the allegations above word for word and paragraph for paragraph.

190.    The *First Amendment* to the United States Constitution guarantees all citizens, including public employees, the right to free speech.

191.    Plaintiff engaged in protected activity under the *Free Speech Clause* when she spoke out on matters of significant public concern, *i.e.,* unlawful discrimination, retaliation, the creation of a hostile and retaliatory work environment based on race and gender, and other unlawful employment practices at the Macomb County Medical Examiner's Office.

192.    Plaintiff engaged in protected activity under the *Free Speech Clause* when she spoke out about violations of health and safety laws during the Covid-19 pandemic at the Medical Examiner's Office to protect employees and the community from spread of the potentially lethal Coronavirus.

193.    Plaintiff engaged in protected activity under the *Free Speech Clause* when she spoke out against the misuse of taxpayer dollars and other unlawful conduct at the Medical Examiner's Office under the direction, supervision and control of Defendant Spitz/SPG.

194.    When Plaintiff spoke out as described herein and exercised her *Free Speech* rights, she did so as a citizen speaking out on matters of significant public concern, *i.e.,* unlawful discrimination, retaliation, public health violations, misuse of taxpayer funded equipment, etc.

195.    Defendants Spitz/SPG, Fontenot, Ridella, and McKinnon knew of Plaintiff's protected activity.

196.    Defendants Spitz/SPG, Fontenot, Ridella, and McKinnon retaliated against Plaintiff because of her protected activity.

197.    Defendants Spitz/SPG and/or Fontenot retaliated against Plaintiff when each, with the knowledge and/or approval of Defendants Ridella and McKinnon, took adverse employment actions against her because of her protected activity, including, among other things, creating a retaliatory hostile environment, issuing her bogus disciplines, docking her pay, treating her more harshly and differently from similarly situated employees, and intentionally engaging in other unlawful conduct intended to force Plaintiff to quit and which would deter a reasonable citizen of ordinary firmness from speaking out.

198.    Defendants Ridella and McKinnon knew of the retaliation and creation of a retaliatory hostile environment at the Medical Examiner's Office created and perpetuated by Spitz/SPG but failed to take any meaningful action whatsoever to stop the harassment or remediate the retaliatory hostile environment created and

perpetuated by Defendants Spitz/SPG and intentionally engaged in other unlawful conduct intended to force Plaintiff to quit.

199.   A causal connection exists between Plaintiff's protected activity and the adverse employment actions visited upon her by Defendants Spitz, Ridella, McKinnon, and Fontenot, culminating in her constructive discharge.

200.   Defendants Spitz, Ridella, McKinnon, and Fontenot's actions were intentional, deliberate, and motivated by Plaintiff's protected speech.

201.   Plaintiff's interest in free speech outweighed the employer's interest under the *Pickering* balancing test.

202.   Defendants Spitz, Ridella, McKinnon, and Fontenot had a duty to intervene to stop the unconstitutional conduct visited upon Plaintiff by the other.

203.   Defendants Spitz, Ridella, McKinnon, and Fontenot breached their duty and, instead, encouraged and/or allowed the unconstitutional conduct described in this Complaint to continue and worsen.

204.   As a direct and proximate result of Defendants Spitz/SPG, McKinnon, Ridella and Fontenot's wrongful acts and omissions, including the constructive discharge of Plaintiff, Plaintiff suffered economic loss, lost wages, front pay, fringe benefits and the like and non-economic injuries, including but not limited to, mental anguish, physical and emotional distress, humiliation, mortification, outrage, embarrassment, anxiety, depression, degradation, fear, loss of the enjoyments of life,

loss of earnings, and other damages which will continue throughout and beyond this litigation.

## COUNT IV

### *MONELL* CLAIM AGAINST DEFENDANT MACOMB COUNTY FOR THE VIOLATION OF PLAINTIFF'S *FIRST AMENDMENT FREE SPEECH* RIGHTS

205.   Plaintiff restates the allegations above word for word and paragraph for paragraph.

206.   At the time of the constitutional deprivations described above, Defendant Macomb County had an illegal policy or custom of retaliating against and attempting to silence employees, like Plaintiff, who exercised their clearly established *First Amendment* constitutional rights to speak out as citizens on matters of substantial public concern, as Plaintiff did during her employment with Defendant Macomb County.

207.   At the time of the constitutional deprivations described above, Defendant Macomb County failed to properly supervise or train its department heads, policy makers, employees and/or agents concerning violations of its employees' civil rights and legal requirement to refrain from acts of retaliation because of complaints or concerns voiced by employees, as Plaintiff voiced her concerns in this case.

208.   The unconstitutional acts and omissions described herein were ratified

by an official with final decision-making authority (*i.e.,* Defendants McKinnon, Ridella and/or Spitz/SPG) and/or the County's custom of acquiescence and tolerance to unlawful discrimination based on race and gender in violation of the *Fourteenth Amendment Equal Protection Clause* and retaliating against public employees who engaged in *Free Speech* protected under the *First Amendment,* like Plaintiff.

209. As a direct and proximate result of Defendant Macomb County's wrongful acts and omissions, including the constructive discharge of Plaintiff, Plaintiff suffered economic loss, lost wages, front pay, fringe benefits and the like and non-economic injuries, including but not limited to, mental anguish, physical and emotional distress, humiliation, mortification, outrage, embarrassment, anxiety, depression, degradation, fear, loss of the enjoyments of life, loss of earnings, and other damages which will continue throughout and beyond this litigation.

## COUNT V

### VIOLATION OF MICHIGAN'S
### WHISTLEBLOWERS PROTECTION ACT

210. Plaintiff restates the allegations above word for word and paragraph for paragraph.

211. Defendants Macomb County, Spitz, Ridella, McKinnon, and Fontenot are all "employers" covered under Michigan's Whistleblower Protection Act (WPA), being M.C.L. §15.361, *et seq.*

212. Plaintiff is an employee covered under the WPA.

213.   Pursuant to M.C.L. §15.362:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

214.   Plaintiff engaged in protected activity under the WPA when she reported her suspicions of health and safety law violations at the Medical Examiner's Office to Defendant County, Spitz/SPG, McKinnon, Ridella, Fontenot and MIOSHA.

215.   Defendants County, Spitz/SPG, McKinnon, and Fontenot knew of Plaintiff's protected activity.

216.   Defendants County, Spitz/SPG, McKinnon, and Fontenot discriminated against Plaintiff concerning the terms and conditions of her employment and visited adverse employment actions upon her because of her protected activity.

217.   Among other things, Defendants County, Spitz/SPG, McKinnon, and Fontenot, individually and collectively, made working conditions so oppressive and intolerable to force Plaintiff to quit a job at which she excelled and otherwise loved.

218.   As a direct and proximate result of Defendants County, Spitz/SPG, McKinnon, and Fontenot's wrongful acts and omissions, including the constructive discharge of Plaintiff, Plaintiff suffered economic loss, lost wages, front pay, fringe benefits and the like and non-economic injuries, including but not limited to, mental anguish, physical and emotional distress, humiliation, mortification, outrage, embarrassment, anxiety, depression, degradation, fear, loss of the enjoyments of life, loss of earnings, and other damages which will continue throughout and beyond this litigation.

## COUNT VI

### VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT BASED ON SEX AND RACE AND/OR CREATION OF A HOSTILE WORK ENVIRONMENT BASED ON SEX AND RACE

219.   Plaintiff restates the above allegations word for word and paragraph for paragraph.

220.   At all material times, *all* Defendants, including Defendants County, McKinnon, Ridella, Spitz/SPG, Roland, and Fontenot, were employers covered by and within the meaning of the Elliott Larsen Civil Rights Act (ELCRA), being M.C.L. §37.2101 *et seq.*

221.   As an indigenous Woman of color, Plaintiff is a member of a protected class.

222.   As described above, Plaintiff was subjected to severe and pervasive sexual harassment by supervisors and co-employees, including Defendant Spitz, Defendant Roland, Terebesi and co-employees B.H., V.S., and L.P.

223.   As described above, the Medical Examiner's Office was permeated with discriminatory intimidation, ridicule, and insult that were sufficiently severe and pervasive to alter the conditions of Plaintiff's work environment and create an abusive work environment.

224.   As described above, the communication and conduct were so severe or pervasive to create an environment that a reasonable person would find hostile or abusive and Plaintiff, the victim, subjectively regarded the environment as abusive.

225.   Plaintiff was subjected to unwelcome communication and/or conduct on the basis of sex and/or race.

226.   The unwelcome sexual and/or race-based conduct or communication was intended to or in fact did substantially interfere with Plaintiff's job and/or created an intimidating, hostile, or offensive work environment.

227.   There is a basis for holding Defendant Macomb County liable for the hostile environment at the Medical Examiner's Office created, nurtured, encouraged and tolerated by Defendant Spitz/SPG, Defendant Roland and supervisory staff at the Medical Examiner's Office.

228.   Defendant Director of Health Ridella, Director of Human Resources and Labor Relations McKinnon, Defendant Spitz/SPG, Defendant Roland and supervisory staff knew of the hostile work environment described herein but failed to document, promptly investigate, correct, or remediate the hostile environment.

229.   Instead, Defendants Ridella and McKinnon, the persons empowered to stop the unlawful conduct at the Medical Examiner's Office, protected and insulated Medical Examiner Spitz/SPG, the very person/entity responsible for the creation and perpetuation of a hostile environment.

230.   Among other things, Defendants Director Ridella and Director McKinnon failed and refused to investigate, discipline, or correct Defendant Spitz/SPG's unlawful conduct which only emboldened Spitz/SPG and worsened the abusive work environment for Plaintiff and other employees at the Medical Examiner's Office.

231.   Defendant McKinnon, Defendant Ridella, Defendant Spitz/SPG, and Defendant Roland's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

232.   Defendant Macomb County is responsible for Defendants Spitz/SPG, McKinnon, Ridella, and Roland's unlawful conduct under the doctrines of respondeat superior/vicarious liability.

233.   Defendant McKinnon, Defendant Ridella, Defendant Spitz/SPG, Defendant Roland and Terebesi's discrimination of Plaintiff and/or their creation, nurturance and perpetuation of a hostile work environment based on sex and race is a violation of ELCRA.

234.   As a direct and proximate result of Defendant Macomb County, Defendant McKinnon, Defendant Ridella, Defendant Spitz/SPG, and Defendant Roland's wrongful acts and omissions, including the constructive discharge of Plaintiff, Plaintiff suffered economic loss, lost wages, front pay, fringe benefits and the like and non-economic injuries, including but not limited to, mental anguish, physical and emotional distress, humiliation, mortification, outrage, embarrassment, anxiety, depression, degradation, fear, loss of the enjoyments of life, loss of earnings, and other damages which will continue throughout and beyond this litigation.

## COUNT VII

### RETALIATION IN VIOLATION OF ELCRA AND CREATION OF A RETALIATORY HOSTILE ENVIRONMENT

235.   Plaintiff restates the above allegations word for word and paragraph for paragraph.

236.   Plaintiff's complaints to Defendant Macomb County, Defendant McKinnon, Defendant Ridella, Defendant Spitz/SPG, Defendant Roland, Defendant Fontenot, supervisor Terebesi, the EEOC and others about the violation of her civil rights, and those of third-parties, is protected activity under the ELCRA. *See,* Mich.

Compiled Laws §37.2701.

237.   Plaintiff engaged in protected activity under the ELCRA when she reported the violations of her civil rights internally and when she reported violations to the EEOC.

238.   Defendant Macomb County, Defendant Spitz/SPG, Defendant McKinnon, Defendant Ridella, Defendant Fontenot and supervisory staff at the Medical Examiner's Office knew of Plaintiff's protected activity because she and/or the EEOC told them about it.

239.   Defendant Macomb County, Defendant Spitz/SPG, Defendant McKinnon, Defendant Ridella, and/or Defendant Fontenot retaliated against Plaintiff when they took adverse employment actions against her because of her protected activity, including, among other things, creating a retaliatory hostile environment, issuing her bogus disciplines, docking her pay, treating her more harshly and differently from similarly situated employees, deliberately imposing unreasonable and oppressive working conditions intended to force Plaintiff to quit and intentionally engaging in other unlawful conduct which would deter a reasonable citizen of ordinary firmness from speaking out.

240.   A causal connection exists between Plaintiff's protected activity and the adverse employment actions wrongly visited upon Plaintiff.

241.   Plaintiff was subjected to severe or pervasive retaliatory harassment by

Defendants Macomb County, Defendant Spitz/SPG, Defendant Fontenot, Defendant McKinnon, Defendant Ridella and supervisory staff at the Medical Examiner's Office.

242.   The adverse actions taken by Defendant Macomb County, would deter a person of ordinary firmness from speaking out about the rampant violations of civil rights at the Macomb County Medical Examiner's Office.

243.   As a direct and proximate result of Defendant Macomb County, Defendant Spitz/SPG, Defendant McKinnon, Defendant Ridella, Defendant Fontenot's wrongful acts and omissions, Plaintiff suffered economic and non-economic loss, mental anguish, physical and emotional distress, humiliation, mortification, embarrassment, anxiety, depression, fear, loss of the enjoyments of life, loss of earnings, and other damages which will continue throughout and beyond this litigation.

## COUNT VIII

### INTERFERENCE AND/OR RETALIATION
### IN VIOLATION OF THE FEDERAL FAMILIES FIRST
### CORONA VIRUS RESPONSE ACT (FFCRA)

244.   Plaintiff restates the above allegations word for word and paragraph for paragraph.

245.   Defendant Macomb County is an employer covered under the FFCRA.

246.   Plaintiff is an employee covered under the FFCRA.

247.    Under the FFCRA Plaintiff was qualified for paid sick time because she was: (a) subject to a Federal, State or local quarantine or isolation order related to Covid-19; (b) has been advised by a health care provider to self-quarantine related to Covid-19; (c) is experiencing Covid-19 symptoms and is seeking medical diagnosis; (d) is caring for an individual subject to an order described in (a) or (b); and/or (e) is experiencing any other substantially-similar condition specified by the Secretary of Health and Human Resources, in consultation with the Secretaries of Labor and Treasury.

248.    An employer may not discharge, discipline, retaliate or otherwise discriminate against an employee, like Plaintiff, who takes paid sick leave under the FFRCA, files a complaint or institutes a proceeding under the FFRCA.

249.    Defendant Macomb County violated Plaintiff's rights under the FFRCA when Defendant Macomb County discriminated and/or retaliated against Plaintiff in violation of the FFRCA.

250.    As a direct and proximate result of Defendant Macomb County's wrongful acts and omissions, including the constructive discharge of Plaintiff, Plaintiff suffered economic loss, lost wages, front pay, fringe benefits and the like and non-economic injuries, including but not limited to, mental anguish, physical and emotional distress, humiliation, mortification, outrage, embarrassment, anxiety, depression, degradation, fear, loss of the enjoyments of life, loss of earnings, and

other damages which will continue throughout and beyond this litigation.

## **RELIEF REQUESTED**

**PLAINTIFF REQUESTS** that this Court enter judgment against Defendants

as follows:

1.  Legal relief

    a.  a judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled;

    b.  compensatory damages in whatever amount she is found to be entitled;

    c.  punitive and exemplary damages commensurate with the wrong and Defendants' ability to pay; and

    d.  an award of interest, costs and attorney fees as provided in the above referenced statutes and their counterparts.

2.  Equitable relief

    a.  reinstatement of employment together with an injunction prohibiting any further acts of retaliation or discrimination;

    c.  an award of interest, costs, and reasonable fees; and

    d.  whatever other equitable relief appears appropriate at the time of trial.

Respectfully submitted,

*s/ Joel B. Sklar*
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Joel@joelbsklarlaw.com

Dated:  April 2, 2021

44

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial of this cause of action.

Respectfully submitted,

*s/ Joel B. Sklar*
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Dated:  April 2, 2021                    Joel@joelbsklarlaw.com