UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

---

**ANJANETTE BEAVER,**

Plaintiff,

vs.

**MACOMB COUNTY,** a Michigan Charter County,

**DANIEL SPITZ,** in his individual and official capacity,

**SPITZ PATHOLOGY GROUP, PLLC**, a Michigan professional limited liability corporation,

**ANDREW McKINNON**, in his official and individual capacities,

**PATRICIA ROLAND,** in her official and individual capacities,

**WILLIAM RIDELLA,** in his official and individual capacities, and

**JACQUELINE FONTENOT**, in her official and individual capacities,

Defendants.

**21-CV-10750-TGB-EAS**

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff, Anjanette Beaver, was employed as a Medical Examiner Investigator with the Macomb County Medical Examiner's Office, a component of the Macomb County Health Department. During Beaver's

employment, Defendant, Daniel Spitz and Spitz Pathology Group, PLLC ("Spitz/SPG")[1] served as Chief Forensic Pathologist for Macomb County pursuant to a four-year contract. Ms. Beaver alleges that during her time with the Macomb County Medical Examiner's Office, Spitz/SPG fostered a hostile, sexually-charged and retaliatory work environment, tainted with racial discrimination.

After filing various complaints with Macomb County administrators and the Equal Employment Opportunity Commission ("EEOC"), Ms. Beaver commenced this action alleging that Spitz/SPG engaged in retaliatory behavior and made working conditions so intolerable that Ms. Beaver was constructively discharged. Ms. Beaver filed claims for retaliation in violation of her First Amendment rights pursuant to 42 USC §1983, Michigan's Whistleblowers Protection Act ("WPA") and the Elliot Larsen Civil Rights Act ("ELCRA"). Defendant Spitz/SPG seeks dismissal of all claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) on grounds that (1) as a public employee, Beaver's speech was made pursuant to her work-related duties and is therefore not protected and (2) Spitz/SPG was not Beaver's employer as required by the WPA and ELCRA. Defendant Spitz/SPG also moves for summary judgment as a matter of law on grounds that Beaver has failed to provide

---

[1] Daniel Spitz and Spitz Pathology Group, PLLC will be referred to in the singular, as a collective entity throughout this opinion.

sufficient evidence to establish the existence of elements essential to her case – namely that Spitz/SPG was her employer.

## I.     BACKGROUND

Plaintiff Anjanette Beaver, an Indigenous Native American woman, began working as a Medical Examiner Investigator at the Macomb County Medical Examiner's Office in 2015. ECF No. 1, PageID.4. As a Medical Examiner Investigator, Beaver was responsible for investigating the cause and manner of an individual's death. ECF No. 20, Page.ID.20.

During Beaver's time at the Medical Examiner's Office, Defendant Daniel Spitz, and his corporation, Defendant Spitz Pathology Group, PLLC, were under contract with the County. Pursuant to this contract, Spitz/SPG served as the Macomb County's Chief Forensic Pathologist, responsible for carrying out forensic pathology duties pursuant to MCL 52.201, as well as the administration and management of the Medical Examiner's Office. ECF No. 1-2, PageID.48. Spitz/SPG's duties included, but were not limited to: interviewing candidates and making hiring recommendations; providing new staff orientations; overseeing day-to-day activities of all professional and support staff; establishing quantitative and qualitative goals for the Medical Examiner's Office; evaluating policies and procedures; conducting staff performance evaluations; providing recommendations on staff discipline and work

improvement plans; managing the Medical Examiner's Office budget; and participating in public speaking engagements. *Id*. PageID.50-52.

Shortly after joining the Medical Examiner's Office, Beaver found the work environment to be offensive and tainted with racial animus. According to Beaver, staff members openly displayed pornographic images of naked, black male genitalia as screen savers and sticky notes, as well as made drawings and distributed confetti in the shape of male genitalia. ECF. No.1, PageID.7-13; ECF No. 20, PageID.342. One co-worker went so far as to text Beaver a pornographic image of a naked Black male. ECF No. 1, PageID.13.

On May 26, 2020, a chocolate cake in the shape of male genitalia, along with balloons displaying drawings of male genitalia were brought into the office to celebrate a birthday. *Id*. This incident was reported in the Detroit news media and some national outlets. Pl's. Ex. C, ECF No.1-4, PageID.62-74. The cake and balloons were present for four days despite Beaver repeatedly asking why they remained displayed in the office. ECF No. 1, PageID.14.

Some office staff also made racial comments. For instance, Beaver alleges that an immediate supervisor often instructed her to "go deal with her people" in reference either to interacting with or identifying the decedents of African American families who were perceived to be hostile or difficult. *Id*. PageID.10. After instructing Beaver to "deal with her

4

people" in such situations, Beaver's immediate supervisor, co-workers, and Defendant Roland all began to then chant "Fight! Fight! Fight!" *Id.*

On another occasion, Beaver claims she advised Defendant Roland that a distraught family had damaged the door lock, to which he responded, "Are they Black? They can break the doors, and nothing will happen to them because they are Black. They'll just say they were upset." *Id.* at PageID.15. Beaver found these comments to be offensive and racist. *Id.*

Beaver contends that Defendant Spitz/SPG was aware of these incidents and did not take steps to document, address, investigate, elevate, or remediate the offensive and unlawful conduct of the staff. *Id.* PageID.4-15. Instead, he encouraged, participated in, and condoned the unlawful behavior. *Id.*

On July 20, 2020, Beaver filed an internal complaint with the Macomb County Human Resources and Labor Relations department about the offensive and unlawful conduct of staff and supervisors at the Medical Examiner's Office. *Id.* at PageID.16. On July 26, 2020, Beaver also filed a charge of discrimination with the EEOC about the offensive and unlawful conduct. *Id.*; Pl's. Ex. B. ECF No. 1-3, PageID.57-60. After filing both complaints, Beaver alleges Spitz/SPG became combative and uncooperative with Beaver and refused to properly communicate with her. *Id.*

On August 11, 2020, Beaver met with Human Resources Labor Relations Director Defendant McKinnon, Health Director Defendant Ridella, Deputy Health Director Krista Willette, Macomb County Deputy/Chief Advisor Albert Lorenzo and Spitz/SPG to discuss her complaints of a hostile work environment. *Id.* at PageID.18. Although Defendant McKinnon told Beaver "there is an absolute intolerance" of retaliation, he refused to provide her with the results of his "findings" or take any disciplinary action against Spitz/SPG. *Id.* at PageID.19.

Following this meeting, Beaver alleges Spitz/SPG initiated a disciplinary investigation against her—the details of which are not provided—despite a lack of evidence of wrongdoing on her part, and he continued to refuse to cooperate or communicate with her. *Id.*

On August 31, 2020, Beaver formally notified Defendant McKinnon, County Executive Hackel, Macomb County Board of Police Commissioners, Macomb County Board of Ethics and the EEOC regarding the unlawful harassment, hostile environment and retaliation nurtured and tolerated by Spitz/SPG. *Id.* PageID.20. On September 9, 2020, Beaver filed a second Charge of Discrimination with the EEOC for retaliation. *Id.*; Pl's, Ex. D, ECF No.1-5, PageID.76-77. However, in a follow up meeting with county officials and Human Resources and Labor Relations Deputy Director Karlyn Semlow, Beaver was told they were unable to corroborate any violations of county policy. ECF No.1, PageID.20.

On October 31, 2020, Beaver notified the Macomb County COVID-19 team about her concerns of a lack of Personal Protection Equipment ("PPE"), lack of training and the threat of exposure and cross-contamination of vehicles and homes visited by investigators. *Id*. at PageID.21. At a follow up meeting with Spitz/SPG and other Macomb County staff, Spitz/SPG insisted adequate PPE was available and denied Beaver's request for Tyvek suits and training for PPE and respiratory protection. *Id*. at PageID.22. Shortly thereafter, Beaver contracted COVID-19 and upon returning from her mandated quarantine, she received her first written discipline. *Id*.

On December 6, 2020, Beaver informed Spitz/SPG and others at the Medical Examiner's Office that she had contacted the Michigan Occupational and Safety Health Administration ("MIOSHA") to report her suspicions of violations of health and safety laws. *Id*. Following this, Beaver was involuntarily taken off scene responses at the direction of Defendant Ridella, Defendant McKinnon and/or Spitz/SPG. *Id*. On February 18, 2021, a MIOSHA investigator issued a "Citation and Notification of Penalty" to the County with a "Proposed Penalty Notice" for $6,300.00 for serious violations at the Medical Examiner's Office. *Id*. at PageID.24; Pl's. Ex. E, ECF No. 1-6, PageID.81.

On February 19, 2021, Beaver was informed by Macomb County Human Resources that an audit had been conducted and 20 hours would be deducted from her sick-time bank for the time she was ill with COVID-

19. *Id*. at PageID.25. Beaver was also notified that an additional $300.00 would be deducted from her paycheck due to Federal COVID-19 funds that she had received. *Id*. Beaver asserts that she knew of similarly-situated employees who were neither audited nor had their pay reduced despite an absence from work. *Id*.

On March 2, 2021, Beaver submitted Family Medical Leave ("FMLA") documentation to County Human Resources and Defendant Fontenot due to the anxiety and stress she suffered as a result of the allegedly unlawful conduct of county employees.

Plaintiff alleges on March 15, 2021, Macomb County, through its agents and employees which included Spitz/SPG, constructively discharged Beaver by intentionally making working conditions so intolerable and unpleasant thereby forcing her to quit. *Id*. at PageID.26; Pl's Ex. F, ECF No. 1-7, PageID.93.

On March 19, 2021, Beaver received a Right to Sue Letter from the EEOC and this action followed. ECF No. 1, PageID.26; Pl's. Ex. G, ECF No. 1-8, PageID.95.

## II.   STANDARD OF REVIEW

### A. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit or claim where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). In

8

evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

### B. Motion for Summary Judgment

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law."

9

*Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); see also Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"Although Rule 56(b) allows a party to file for summary judgment "at any time", the general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Moore v. Shelby County Kentucky*, 718 Fed.Appx 315, 319 (6th Cir. 2017) (citing *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231-32 (6th Cir. 1994). Rule 56 "provides courts with a useful method by which meritless cases may be discharged . . . the benefits of this rule are quickly undermined if it is employed in a manner that offends basic concepts of fundamental fairness." *White's Landing*, 29 F.3d at 231.

However, the non-movant must inform the district court of its need for discovery which is accomplished by filing an affidavit pursuant to Rule 56(d) which provides:

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P.56(d).; *Moore*, 718 Fed.Appx at 319. Summary judgment will be premature if the opposing party has filed a proper Rule 56(f)

affidavit. (*Glen Eden Hosp., Inc. v. Blue Cross and Blue Shield of Mich., Inc.,* 740 F2d 423, 428 (6th Cir. 1984); Pl's. Ex. B, ECF No. 20-3, PageID.371.

## III.   ANALYSIS

### A. Liability under 42 U.S.C. § 1983 as a State Actor.

Spitz/SPG asserts that, because of his agreement with Macomb County and his status as an independent contractor, he is not a state actor for the purposes of liability under 42 U.S.C. § 1983. ECF No. 17, PageID.225. However, Beaver argues Spitz/SPG discharged governmental functions as the county's Chief Medical Examiner when her constitutional rights were violated and therefore, even as an independent contractor, Spitz/SPG is subject to 42 U.S.C. § 1983 liability.

Section 1983 affords a "civil remedy" for deprivations of federally protected rights caused by persons acting under the color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). In any § 1983 action, the inquiry must focus on whether: (1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived a person of rights, privileges or immunities secured by the Constitution of laws of the United States. *Id*.

Private persons, by their actions, may become state actors for the purpose of § 1983. To act under the color of law does not require that an individual be an officer of the state – it is enough that [he/she] is a willful participant in joint activity with the State or its actors. *Tahfs v. Proctor*

11

316 F.3d 584, 590 (6th Cir. 2003). If private persons jointly engage in a prohibited action with state officials, they are acting under the color of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). Therefore, a private party may be considered a state actor if: (1) the deprivation was caused by the exercise of some right or privilege created by the State; and (2) the offending party acted together with or obtained significant aid from state officials, or because his conduct is chargeable to the State. *Id*. (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

The Sixth Circuit recognizes three tests for determining whether private conduct is fairly attributable to the State: (1) the public function test, which requires that the private person/entity exercise powers traditionally reserved for the state like elections or eminent domain; (2) the state compulsion test which requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take particular actions such that the choice is really that of the state; and (3) the nexus test which requires a sufficiently close relationship (i.e., via state regulation or contract) between the State and private actor such that the action may be attributed to the State. *Tahfs*, 316 F.3d at 591. (citing *Ellison v. Garbarino* 48 F.3d 192, 195 (6th Cir. 1995)). While there is no clear standard for identifying a sufficiently close nexus, the Sixth Circuit has noted that the inquiry must consider the facts of a particular case or circumstance – a finding can be determined

12

based on a fact-bound inquiry. *Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000).

Neither Spitz/SPG nor Beaver apply any of the tests recognized in the Sixth Circuit to support their positions regarding §1983 liability. On the record before the Court, Beaver has not alleged that Spitz/SPG's actions were a result of encouragement or coercion on the part of the State, so that test will not be applied.  Regarding the second test, although it could be said that the function of a County Medical Examiner involves the exercise of powers traditionally reserved for the state, this issue is not briefed by the parties.  Because the record does support the existence of a close relationship between Spitz/SPG and the County, the Court will apply the nexus test to determine whether Spitz/SPG's conduct can be sufficiently attributed to the State.

Pursuant to Mich. Comp. Laws § 52.201, Spitz/SPG was appointed as the Macomb County Medical Examiner.  According to his contract with the County, he was required to directly oversee day-to-day activities of all staff, create qualitative and quantitative goals for the medical examiner's office, evaluate procedures and policies, manage budgets, provide information to the public and/or media, and participate in public speaking engagements. EFC No. 1, PageID.5; Pl's. Ex. A, ECF No. 1-2, PageID.49-52. Taking Beaver's allegations as true, she has plausibly shown a sufficiently close relationship between Spitz/SPG and the State such that Spitz/SPG could be a State actor for the purpose of § 1983.

13

## B. Prima Facie Case of First Amendment Retaliation.

Regardless of whether they may be considered state actors, Spitz/SPG contends that Beaver's speech was made pursuant to her duties as a County employee rather than a private citizen and is therefore not protected by the First Amendment. ECF No. 17, PageID.221. Specifically, Spitz/SPG asserts that none of Beaver's statements were made to the public, disseminated to the public or concerned anything but work-related matters. *Id.* at PageID.225-225. In response, Beaver points out that she commented on matters of significant public concern including race/gender discrimination by reporting to the EEOC she had been subjected to "daily harassment via inappropriate sexual images of penises or groin area of men on more than one [office computer]," and provided examples of incidents which included that "a cake was brought into the office decorated with a dark brown/black penis drawn onto the top with icing" and that "a balloon had a penis hand-drawn onto the balloon in black magic marker." ECF No. 1-3, PageID.57. Additionally, Beaver reported that staff made "derogatory statements" regarding African American families and exhibited racial animus in their interactions with them.

In Beaver's second EEOC complaint, she cited retaliatory animus on the part of Spitz/SPG stating that she "is [being] subjected to discipline via an investigation relat[ed] to an unanswered phone call," and that the "Chief Medical Examiner displays erratic and bizarre

14

behavior in my presence," "stands at the end of my desk with his hands on his hips glaring at me and saying nothing," and "glares menacingly as he traverses the length of the office. ECF No. 1-5, Page ID.76.

Further, Beaver contends that it was not within her ordinary job responsibilities as a Medical Examiner Investigator to report discrimination or violations of health and safety laws to the County, Board of Ethics, Board of Police Commissioners, Macomb County Executive Mark Hackel, EECO or MIOSHA. ECF No. 20, PageID.357. Rather, Beaver argues that she was responsible for investigating the cause and manner of an individual's death. *Id*. at PageID.358. Therefore, because Beaver's duties as a medical examiner investigator did not involve overseeing the enforcement of workplace regulations, she asserts that her speech was made as a private citizen rather than as part of her official duties as a medical examiner investigator.

To establish a prima facie case of First Amendment retaliation, Beaver must show three elements: (1) that she engaged in constitutionally protected speech or conduct; (2) that Spitz/SPG took an adverse action against her that would deter a person of ordinary firmness from continuing to engage in that speech; and (3) that a causal connection exists between the protected speech and the adverse employment action. *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014).

i.   **Beaver engaged in constitutionally protected speech when she reported race and gender discrimination and violations of health and safety laws outside the Medical Examiner's Office.**

Beaver asserts that her essential functions as a Medical Examiner Investigator did not include reporting violations of a race and gender discrimination and violations of health and safety laws. ECF No. 20, PageID.358. Rather, Beaver asserts that she was responsible for investigating the cause and manner of an individual's death. *Id.* Spitz/SPG contends that Beaver's speech was made in the course of performing her official duties as a county employee. ECF No. 17, PageID.221.

The Supreme Court has established a three-part test for evaluating whether a public employee's speech is constitutionally protected. A plaintiff must show three things about her speech: (1) that it was made as a private citizen rather than pursuant to her official duties; (2) that it involved a matter of public concern; and (3) that her interest in speaking on the matter as a citizen outweighed the state's interest, as an employer, in promoting the efficiency of the public services it performs through its employees. *Garcetti v. Ceballos*, 547 U.S. 410, 417-18 (2006). Furthermore, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Id.* at 421.

16

### a. Beaver's speech was not part of her official duties as a medical examiner investigator.

In 2014, the Supreme Court further refined the meaning of "[w]ithin the scope of an employee's duties". *Lane v. Franks*, 573 U.S. 228, 240 (2014). The Court held that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id*. "Speech that merely concerns those duties do not fall "[w]ithin the scope of an employee's duties." *Id*. Moreover, simply because "a citizen's speech concerns information acquired by virtue of [his/her] public employment does not transform that speech into employee – rather than citizen – speech." *Id*.

The Sixth Circuit has also identified factors it employs in making the determination of whether a public employee's statements were made pursuant to official duties. These factors include "the impetus for her speech, the setting of her speech, the audience, and its general subject matter." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 540 (6th Cir. 2012) (quoting *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 546 (6th Cir. 2007). Other relevant considerations include: (1) whether the statements were made to individuals up the chain of command, and (2) whether the content of the speech is nothing more than the quintessential employee beef, such as management has acted incompetently. *Id*. Additionally, a public employee's speech is protected

when her ordinary job duties do not consist of reporting employee misconduct, and speech outside the chain of command. *Buddenberg v. Weisdack*, 939 F.3d 732, 740 (6th Cir. 2019).

Although the parties did not include in the record an exhibit detailing Beaver's official job description, a 2014 Macomb County Medical Examiner Investigator job posting describes the position of medical examiner investigator as requiring the following essential duties[2]:

- Investigates and examines the death scene and the decedent, including bodies that are decomposed, skeletonized and infectiously diseased, in order to assist in determining cause of death.
- Interviews and obtains statements from witnesses, family members and medical personnel to assist in determining cause of death and determines notification procedures
- Ensures that evidence, death scene and specimens are preserved for authenticity in cooperation with local law enforcement activities.
- Determines whether bodies should be released to funeral homes or transported to the morgue for further exam by the Medical Examiner, following established laws and regulations.
- Works cooperatively with law enforcement agencies, funeral homes and others concerned with individual cases.
- Prepares detailed reports and analysis on investigations of cases and documents post-mortem changes.
- Participates in scene debriefing.
- Completes scene investigation to include maintaining and then releasing jurisdiction of the body, exit procedures and providing assistance to the family.

---

[2] Full 2014 Macomb County Medical Examiner Investigator job description: https://agency.governmentjobs.com/macomb/job_bulletin.cfm?JobID=852226

- Photographs and/or videotapes scene of death and autopsies to maintain complete records of Medical Examiner cases.

Although the job description may have been updated over the years, it is reasonable to infer that based on the job duties defined in 2014, Beaver's essential functions and responsibilities did not require reporting a hostile and oppressive work environment, or health and safety violations.

Furthermore, Beaver not only communicated her concerns up the chain of command, but also made complaints outside that chain: to Defendant McKinnon, Director of Macomb County Human Resources and Labor Relations; Defendant Ridella, Director of Macomb County Health Department, Krista Willette, Deputy Health Director; Albert Lorenzo Macomb County Deputy/Chief Policy Advisor; and Karlyn Semlow, Human Resources and Labor Relations Deputy Director.  Beaver initially voiced her concerns by filing an internal complaint with Macomb County Human and Labor Relations and then the EEOC which resulted in a meeting with Defendant McKinnon, Defendant Ridella, Krista Willette, Albert Lorenzo and Spitz/SPG to discuss her complaints of a hostile work environment. ECF No. 1, PageID.16, 18. The misconduct Beaver reported included the unlawful conduct of staff and supervisors which was cultivated, encouraged, nurtured and participated in by Spitz/SPG, Defendant Roland and Beaver's immediate supervisor. *Id*. at PageID.16.

### b. Beaver's speech is related to matters of public concern.

Beaver contends that she spoke out on matters of significant public concern as a private citizen when she reported racial discrimination and animus and health and safety violations. Spitz/SPG asserts that Beaver's speech fails step one of the *Garcetti* "constitutionally protected speech" test and therefore neglects to address steps two and three. Because Spitz/SPG has not addressed these elements, they are deemed waived. Regardless, Beaver has plausibly alleged that her speech relates to matters of public concern.

Whether or not a plaintiff's speech touches on a public concern is a question of law. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008). Speech touching on public concern includes speech on "any matter of political, social or other concern to the community." *Handy-Clay*, 695 F.3d at 543 (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). The Supreme Court has identified statements that "bring to light actual or potential wrongdoing or breach of public trust" as speech that involves matters of public concern. *Id.* (quoting *Connick*, 461 U.S. at 148). Allegations of racial discrimination by a public entity inherently involve a matter of public concern, and so too do allegations of invidious discrimination based on sex and disability. *Miller v. City of Canton*, 319 Fed.Appx 411, 418 (6th Cir. 2009).

20

Indeed, the Sixth Circuit has gone as far as to say that "public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law, when exposing graft and corruption, and when seeing that public funds are not purloined or wasted." *Id*. (quoting *Chappel v. Montgomery Cnty. Fire Prot. Dist. No.1*, 131 F.3d 564, 576 (6th Cir 2007). "Exposing governmental inefficiency and misconduct is a matter of considerable significance." *Garcetti*, 547 U.S. at 412.

Beaver's speech was aimed at bringing to light a hostile and oppressive work environment as well as potential health and safety issues that placed Macomb County employees and the public in danger of transmission of COVID-19. Pursuant to *Connick*, this is sufficient to establish a matter of public concern.

### c. Beaver's concerns outweighed the state's interest in promoting the efficiency of public services.

If it is established that an employee's speech was made as a "citizen" on a matter of public concern, *Pickering* requires the court to balance the interests of the public employee "as a citizen, in commenting upon matters of public concern, and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Handy-Clay*, 695 F.3d at 544 (quoting *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). At this stage, the burden

is on the defendant to proffer legitimate grounds for the alleged retaliatory action at issue. *Id.* (citing *Hughes*, 542 F.3d at 180).

Although Beaver contends that her concerns regarding the hostile and oppressive work environment and health and safety violations by the Medical Examiner's Office and Spitz/SPG outweigh the state's interest as an employer in promoting the efficiency of the public services it performs, Spitz/SPG offers nothing to prove the contrary and does not dispute this step of the "constitutionally protected speech" test.

There is strong public interest in ensuring that medical examiner investigators and forensic pathologists follow proper health and safety protocols, especially in light of COVID-19. *Struckel v. Macomb County*, 2:20-CV-12995-TGB, 2021 WL 4034263 at *8 (E.D. Mich. Sept. 3, 2021). Clearly, the state has little or no interest in ensuring that public employees may disregard health and safety protocols without a rational basis for doing so. *Id.* Additionally, Title VII of the Civil Rights Act prohibits "discrimination on the basis of race, color, religion, sex or national origin" and as an employer covered under Title VII, the Macomb County Medical Examiner's Officer and Spitz/SPC can have no state interest in creating a hostile work environment charged with racial discrimination and animus.

Consequently, Beaver's complaint adequately pleads that her speech involved a matter of public concern that outweighs Macomb

County's interest, as an employer, in promoting the efficiency of the public services it performs through its employees.

### ii. Spitz/SPG engaged in an adverse employment action against Beaver through his involvement of the constructive discharge of Beaver.

Beaver contends that the severe and pervasive retaliatory harassment by Spitz/SPG culminated in her constructive discharge. ECF No. 1, PageID.30. Spitz/SPG does not dispute this, focusing instead on their argument that Beaver did not engage in constitutionally protected speech.

The term "adverse action" in the employment context refers to actions such as "discharge, demotions, refusal to fire, nonrenewal of contracts and failure to promote." *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999). Any action that would deter a person of ordinary firmness from exercising protected conduct will suffice as an adverse action – which may include harassment. *Id*. at 397. Additionally, the Supreme Court has held that constructive discharge may also qualify as an adverse employment action. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 143 (2004).

To demonstrate constructive discharge, the plaintiff must prove that the employer (1) created intolerable working conditions, as perceived by a reasonable person, (2) with the intention of forcing the employee to quit and the employee actually quits. *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012) (quoting *Moore v. KUKA Welding Systems & Robot Corp*,

23

171 F.3d 1073, 1080 (6th Cir. 1999). Whether a retaliatory action is "sufficiently severe to deter a person of ordinary firmness from exercising [their] rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).

Here, Beaver has plausibly alleged that an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in the protected conduct. After Beaver made her initial internal complaint to Macomb County Human Resources and Labor Relations about the hostile work environment based on sex and race, she alleges Spitz/SPG began to harshly scrutinize and criticize Beaver's work. ECF No. 1, PageID.16. Additionally, Spitz/SPG refused to communicate with Beaver or respond in a timely manner, becoming increasingly combative and uncooperative. *Id*.

After the August 11, 2020 meeting, Spitz/SPG became even more hostile and actively impeded Beaver's ability to perform her role by refusing to communicate or cooperate with her on case files, and treating her worse than other similarly-situated employees. *Id*. at PageID.19. Beaver also alleges that Spitz/SPG initiated disciplinary investigations against her in response to an unanswered phone call—though the record does not provide any proof of this claim, *id*.; ECF No. 1-5, PageID.76. And although Spitz/SPG acknowledges one of his "specified duties" as Director of Macomb County Health Department was to make recommendations "regarding staff discipline," he maintains he was

24

without any authority to discipline any county employee per his agreement with the County. Def's. Ex. F, ECF No. 17-7, PageID.285.

After reporting a variety of health and safety violations, Beaver was involuntarily taken off scene responses, although it is unclear whether this direction came from Spitz/SPG, Defendant Ridella or Defendant McKinnon. ECF No. 1, PageID.19. Additionally, the County refused Beaver overtime pay, deducted sick time due to a mandated COVID-19 quarantine, and deducted $300 for her paycheck due to Federal COVID-19 related funds she had received. *Id.* at PageID.25. Although Spitz/SPG asserts that he was without any authority to make decisions regarding Beaver's compensation and benefits per his agreement with the County, taking the allegations in the Complaint as true, Beaver has plausibly alleged facts of sufficiently intolerable working conditions such that a reasonable person would be forced to quit.

### iii.   A causal connection exists between Beaver's speech and her constructive discharge.

Beaver contends that while employed at the Macomb County Medical Examiner's Office, Spitz/SPG was the "person in-charge" responsible for, *inter alia*, hiring, supervision, training and enforcement of policy and procedures concerning unlawful discrimination, compliance with all health safety and other laws, and thus influenced the hostile work environment and acts of retaliation. ECF No. 1, PageID.6,18.

An adverse action is motivated by protected speech if the "speech was a substantial or motivating factor in the adverse action." *Miller v. City of Canton*, 319 Fed.Appx 411, 419 (6th Cir. 2009). A plaintiff will satisfy this element by showing that the adverse action was motivated at least in part by the protected speech. *Id*. (quoting *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). A causal link can be shown through direct or indirect evidence which may include temporal proximity between engaging in protected activity and an adverse employment action such that an inference of causation is created. *Dye v. Office of the Racing Com'n.,* 702 F.3d 286, 305 (6th Cir. 2012) (quoting *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010).

Once a plaintiff establishes that their protected conduct was a motivating factor behind any adverse action, the burden shifts to the defendant to show that the same action would have been taken in the absence of any protected activity. *Thaddeus-X*, 175 F.3d at 399. Although it is not clear precisely what role Spitz/SPG played in directing the retaliatory actions that led to Beaver's constructive discharge, at a 12(b)(6) motion to dismiss stage, Beaver's allegations must be taken as true. Spitz/SPG's position as the "person in-charge," his endorsement of a racially tainted, sexually-charged hostile work environment, refusal to properly communicate—which impaired  Beaver's ability to successfully complete her job duties—and his  involvement in hearing some of her

complaints, all raise a plausible inference that Spitz/SPG played a role in the retaliation that led to Beaver's constructive discharge.

Therefore, the Complaint's allegations have met the elements required to establish a First Amendment retaliation claim and are sufficient to allow discovery.

## C. Spitz/SPG may be considered Beaver's employer under the WPA and ELCRA.

Spitz/SPG contends that Beaver's state law claims under the WPA and ELCRA must be dismissed as a matter of law because they were not her employer as (1) defined in the statutes or (2) under the joint employer doctrine. Beaver argues in response that her state law claims are valid because Spitz/SPG was her employer based on (1) agency theory and (2) joint employer doctrine.

An entity is the joint employer of another entity's formal employees and liable under federal or state anti-discrimination laws if the two "share or co-determine matters governing essential terms and conditions of employment. *Carrier Corp v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985). Under the joint employer doctrine, the inquiry focuses on whether an entity "maintains sufficient control over some or all the formal employees of another [entity] as to qualify as those employees' employer." *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 Fed.Appx 488, 491 (6th Cir. 2011) (citing *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997)).

27

The non-exhaustive factors to consider when making a joint employer determination include the ability to hire, fire, and discipline; affect compensation and benefits; and direct and supervise performance. *Id*. Other factors courts have examined include supervision of day-to-day activities, promulgation of work rules, conditions of employment, work assignments and issuance of operating instructions. *Woods v. Washtenaw Hills Manor*, No. 07-CV-15420, 2009 WL 2222629, at *17 (E.D. Mich. July 23, 2009).

Although little case law exists on whether the WPA or ELCRA support the joint employer doctrine, Beaver has put forward facts to plausibly suggest that Spitz/SPG and the County were joint employers. Spitz/SPG argues he was not Beaver's employer under the joint employer doctrine because Spitz/SPG had no relationship with Beaver and was without authority to hire, fire, discipline or affect the compensation and benefits of Beaver. ECF No. 17, PageID.229. Spitz/SPG contends that, for example, if he and the County had entered into an agreement where he assigned work to Beaver, he may qualify as her joint employer. *Id*. However, because of the nature of his contract with the County had little to do with Beaver or her work assignments, Spitz/SPG asserts that there are no joint employers in the matter. *Id*.

However, Spitz/SPG's contract indicates he has significant influence in decisions pertaining to hiring and staff discipline. ECF No. 1-2, PageID.50-51. Additionally, Spitz/SPG was responsible for the day-

to-day *management* of all professional and support staff, creation of goals and objectives for the Medical Examiner's Office, the implementation of processes and procedures, and annual performance evaluation of staff.

Taking Beaver's allegations as true, Spitz/SPG also initiated disciplinary investigations against Beaver, and may have decided or participated in the decision to remove Beaver from scene responses, thereby directing her work assignments. ECF No. 1, PageID.22. At the very least, Beaver has put forward enough facts to plausibly suggest that Spitz/SPG was her employer under the WPA and ELCRA. Accordingly, Spitz/SPG's motion for summary judgment is denied.

### D. Beaver establishes a prima facie case under the WPA.

To establish a prima facie case under Michigan's WPA, a plaintiff must show that (1) she engaged in a protected activity; (2) was subjected to the claimed act of discrimination or discharge; and (3) the protected activity caused the discharge or adverse employment action. *Cowell v. Am. Red Cross Genesse-Lapeer Chapter*, No. 12-15258, 2013 WL 5372805, at *4 (E.D. Mich. Sept 25, 2013) (citing *Whitman v. City of Burton*, 493 831 N. W.2d 223, 229 (Mich. 2013)).

Since the Court finds that Spitz/SPG is an employer for WPA analysis, Beaver's WPA claim survives the motion to dismiss stage for the same reasons that that the First Amendment Retaliation claim survives. First, as discussed under Beaver's First Amendment retaliation claim, the complaint adequately alleges that Beaver engaged in protected

speech when she reported her suspicions of health and safety violations. *Id*. at PageID.36. Second, the Court has already established Beaver has plausibly alleged that she suffered an adverse action when Spitz/SPG constructively discharged her by making her working conditions so "oppressive and intolerable to force [Beaver] to quit." ECF No. 1, PageID.36. Finally, the temporal proximity between Beaver's protected activity and the alleged constructive discharge sets out a plausible claim that she suffered an adverse action due to reporting possible health and safety violations.

### E. Beaver establishes a prima facie case under the ELCRA.

Beaver alleges Spitz/SPG violated the ELCRA by the creation of (1) a hostile work environment based on sex and race and (2) a retaliatory hostile environment.

#### a. Beaver adequately pleads facts supporting a hostile work environment based on sex and race.

Beaver alleges that Spitz/SPG discriminated against her on the basis of her race and sex, in violation of MCL 37.2202(1)(a) of the ELCRA, which provides as follows:

> An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

Mich. Comp. Laws Ann. § 37.2202(1) (West 2022). Additionally, it is unlawful for employers to discriminate against an individual based on a condition of employment because of sex. The ELCRA further provides:

> Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

> (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.

Mich. Comp. Laws Ann. § 37.2103(iii) (West 2022).

Claims of alleged discrimination brought under ELCRA are reviewed under the same standard as discrimination claims brought under Title VII. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 418 (6th Cir. 1999). To establish a prima facie case of hostile work environment based on either sexual harassment or racial discrimination, a plaintiff must present sufficient evidence to show that (1) she belongs to a protected group; (2) she was subjected to communication or conduct on the basis of race or sex; (3) the unwelcome conduct or communication was based on race or sex; (4) the unwelcome conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating,

hostile, or offensive work environment; and (5) respondeat superior. *Radtke v. Everett,* 442 Mich. 368, 382-383 (1993); *Douglas v. Ford Motor Co.*, No. 306231, 2013 WL 2460051 at *2 (Mich. App. June 6, 2013)

Since the same principles govern sexual and racial harassment claims, the "Court must look to the totality of the circumstances to determine whether the conduct was sufficiently severe or pervasive to alter a plaintiff's conditions of employment and create a hostile work environment." *Matthews v. Detroit Pub. Sch. Cmty. Dist.*, No. 19-13277, 2021 WL 4427176, at *12 (E.D. Mich. September 27, 2021) (citing *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999). Additionally, whether a work environment is hostile requires consideration of the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or merely an offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

The third element of the test limits the scope of analysis – only harassment *based* on the plaintiff's race or sex may be considered. *Schemansky v. California Pizza Kitchen, Inc.*, 122 F.Supp 2d 761, 772, 775 (E.D. Mich. 2000); *Williams v. CSC Transp. Co., Inc.*, 643 F.3d 502, 511 (E.D. Mich. 2011). Harassment is based on race or sex when it would not have occurred but for the plaintiff's sex or race. *Williams*, 643 F.Supp2d at 511 (citing *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 80-81 (1988)

It is undisputed that as an Indigenous Native American woman, Beaver is part of a protected class. However, even taking Beaver's allegations as true, it is a much closer question whether the conduct at issue was directed against Beaver *because* of her sex or race. Beaver alleges that the Medical Examiner's Office was permeated with intimidation, ridicule, and insult so hostile that a reasonable person would find the environment abusive. ECF No. 1, PageID.38.

For instance, various employees of the Medical Examiner's office displayed sticky notes, confetti, and screen saver images of black male genitalia at their desk, and to celebrate a birthday, a brown-colored cake in the shape of male genitalia and balloons displaying hand-drawn images of male genitalia were brought into the office. ECF No. 1, PageID.9-15. Although Beaver describes one example of being sent a graphic image of black male genitalia, she fails to allege than any of the other sexually explicit and racial events or images were specifically directed at her *because* of her sex and/or race. *Id*. However, Beaver does allege that "often" she would be directed to "go deal with her people" in reference to situations when she was told to interact with or help identify an African-American decedent's family members when they were perceived as hostile or difficult, and further that her supervisors and coworkers would chant "Fight, fight, fight!" as she would go to do so. Such conduct shows that racial animus was both present in her work

33

environment and directed toward her because of her race. *Id*. at PageID.10.

Even though Beaver asserts she was the object of harassment because of her sex and/or race, Spitz/SPG alleges that the harassment was not sufficiently severe or pervasive so as to alter Beaver's conditions of employment and create a hostile work environment. However, taking the facts in the complaint as true, the Court finds that Beaver has proffered sufficient information to warrant further inquiry in discovery on the issue.

### b. Beaver plausibly pleads facts in support of a retaliatory hostile environment.

Beaver alleges that Spitz/SPG retaliated by taking an adverse employment action against her because of her protected activity in violation of MCL 37.2701 of the ELCRA, which provides as follows:

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

Mich. Comp. Laws Ann. § 37.2701 (West 2022). To establish a prima facie case of retaliation under ELCRA, a plaintiff must establish the same four elements of a Title VII retaliation claim. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). A plaintiff must demonstrate that (1) she

engaged in protected activity; (2) that this was known to the defendant; (3) that the defendant took employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Madsen v. Kohl's Department Stores, Inc.*, No. 352974, 2021 WL 2391426 at *2 (Mich. Ct. App. June 10, 2021) (quoting *Major v. Village of Newberry*, 892 N.W.2d 402 (2016)).

As discussed in Beaver's First Amendment retaliation claim, Beaver engaged in protected speech when she filed complaints and spoke about the hostile and oppressive working conditions and failure to comply with health and safety laws. Her complaints were known to Spitz/SPG based on his change in treatment of Beaver after her claims were filed. ECF No. 1, PageID.16. Also, the deliberate creation of a hostile and oppressive work environment by Spitz/SPG would deter any person of ordinary firmness from continuing to engage in protected conduct and therefore rises to the level of an adverse action. Lastly, due to the temporal proximity between Spitz/SPG's conduct and creation of a hostile work environment and Beaver's complaints internally and to the EEOC, Beaver has set out a plausible claim that she suffered an adverse action as a result of her protected activity.

Therefore, Beaver has plausibly pled sufficient facts to establish a prima facie case of the creation of a retaliatory hostile work environment under ELCRA.

## CONCLUSION

For all the reasons set above, Defendant Daniel Spitz/Spitz Pathology Group, PLLC's Motion to Dismiss and Motion for Summary Judgment (ECF No. 17) is **DENIED**.

**IT IS SO ORDERED**.

Dated: March 21, 2022  s/Terrence G. Berg
           TERRENCE G. BERG
           UNITED STATES DISTRICT JUDGE